## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 40212

APRIL BEGUESSE, INC., an Idaho
corporation,

    Plaintiff-Counterdefendant-
    Respondent,

v.

KENNETH RAMMELL, an individual,
CHRISTA BEGUESSE, INC., an Idaho
corporation, THE ESTATE OF CHRISTA
BEGUESSE RAMMELL, by its qualified
personal representative, KENNETH
RAMMELL,

    Defendants-Counterclaimant-
    Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Idaho Falls, May 2014 Term

2014 Opinion No. 59

Dated: June 18, 2014

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of
Idaho, Bonneville County. Hon. Joel E. Tingey, District Judge.

The judgment of the district court is <u>affirmed</u>. Attorney's fees and costs on
appeal are awarded to respondent.

Racine, Olson, Nye, Budge & Bailey, Pocatello, attorneys for appellants. David
E. Alexander argued.

Beard St. Clair Gaffney, Idaho Falls, attorneys for respondent. Jeffrey D.
Brunson argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This appeal arises from a fraud, breach of contract, and breach of warranty action brought
by April Beguesse, Inc. (ABI) against Kenneth Rammell (Rammell), the estate of Christa
Beguesse (Christa), and Christa Beguesse, Inc. (CBI) (collectively Defendants) and a breach of
contract counterclaim brought by CBI against ABI. The parties went to trial and the jury returned

1

a verdict in favor of ABI on all claims. Defendants moved for a judgment notwithstanding the verdict (JNOV) or in the alternative a new trial. The district court granted Defendants' motion for JNOV on the finding of fraud by Christa's estate and dismissed that claim. The district court also granted Defendants a new trial on the issue of damages unless ABI accepted a remittitur for damages assessed against CBI only. The district court denied Defendants' motion on the remaining claims of breach of contract, breach of warranty, and fraud. ABI accepted the remittitur. Defendants appeal the district court's denial of their motion. Defendants also seek a reversal of the district court's judgment or in the alternative a new trial on their counterclaim. They raise one evidentiary error. We affirm the judgment of the district court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Christa and her husband Rammell incorporated CBI in Idaho. CBI provided typesetting services to The Rutter Group (Rutter), a legal publisher. Christa and Rammell each owned fifty percent of stock in CBI with Christa as the president and Rammell as the secretary and treasurer. Christa did almost all of the typesetting work and had extensive knowledge and expertise in the field due to her years of experience. Rammell occasionally did accounting for CBI, but the parties agree that Rammell had limited involvement in the business.

In 1999, Rammell and Christa met with an attorney for estate planning purposes. Rammell and Christa valued CBI at $40,000. The parties agree that the value of the business reflected Rammell and Christa's belief that CBI would have little value without Christa because Christa was the sole typesetter for CBI and she never trained anyone else to do the work.

In November of 2001, Rammell and Christa approached Christa's daughter April Beguesse (April) to purchase CBI after first spending two years working closely with Christa to learn the business. April agreed. April would work for CBI from 2002 to 2004, and in 2004 April would take over the business and pay CBI $12,000 a month for eight years, a total of $1,152,000. In exchange for the monthly payments, April believed that she would get consulting and assistance from Christa, CBI's office equipment, ownership of a library of computer files, and proprietary software developed by Christa. Christa and Rammell told April that she could sell the business in the future in a similar way that CBI would be sold to her. April believed that CBI owned the library of computer files, which CBI used to typeset for Rutter's publications specifically, and she believed that the library of files was valued at 1 to 1.3 million dollars. At trial April testified that she relied on Rammell's statements as to the value of the library of files

2

and CBI's ownership of the files. April also believed that the proprietary software had unique codes created by Christa for efficient typesetting within a computer software program called PageMaker. April testified at trial that Christa told her that she created the proprietary software and that Christa made a similar statement during an Idaho Falls Exchange Club presentation. April testified that she did not know that Rammell had stock in CBI. She stated that she would not have agreed to purchase CBI if she knew Rammell was an owner or if she knew CBI did not own the library of files.

On January 6, 2002, April began working for CBI. On January 7, 2002, April sent a letter to Rutter's editor-in-chief Linda Diamond Raznick to introduce herself and announce that she would be joining CBI. From January 6, 2002, to May of 2004, Christa trained April to typeset with the PageMaker software. In January of 2004, April transitioned CBI's typesetting business to ABI, and ABI began making monthly payments of $12,000 to CBI. On October 6, 2004, ABI and CBI signed a lease agreement.[1] ABI frequently hired Christa for consulting work.

In November of 2006, April studied the PageMaker manual for the first time during an update of the software. She learned that the proprietary software actually was provided by PageMaker. Christa had not developed any unique codes for typesetting.

ABI continued to make monthly payments to CBI through November of 2008. On November 10, 2008, Christa died unexpectedly, and ABI stopped making payments to CBI. In total, ABI had paid CBI 59 monthly payments of $12,000, totaling $708,000, and $50,000 in consulting fees to Christa. According to Rammell, ABI owed CBI 37 more payments of $12,000, totaling $444,000, to fulfill the eight-year agreement. Christa's 2007 holographic will left her entire estate to Rammell.

After Christa's death in late 2008, April contacted Raznick and learned that Rutter owned the library of files. Raznick told April that ABI could not sell the library of files upon April's retirement. April explained at trial that the ownership of the library was significant because she "thought the Rutter Group needed us just as much as we needed them. . . . and because of that, there was no need to even think about going anyplace else." It became a "big time" concern for her that Rutter "could take the business away." Raznick's testimony corroborated April's understanding of the ownership of the library of files. Raznick testified that Rutter paid CBI and

---

[1] On summary judgment, the district court ruled that the lease agreement was a sham contract for the purpose of avoiding tax consequences and that neither party intended to agree to a lease. The district court concluded that the lease was unenforceable and that the alleged contract was an oral agreement for the purchase of a business.

ABI to house the files on their servers, but Rutter owned the files and ABI could not sell the business without Rutter's approval. Raznick explained that she could not give assurances to CBI that Rutter would continue to do business with ABI when CBI sold the business. In March of 2009, April relocated ABI to Nevada.

On May 8, 2009, ABI filed a suit in Bonneville County against Rammell, Christa's estate, and CBI seeking declaratory relief and raising claims of fraud, constructive fraud, breach of contract, breach of express warranty, breach of implied warranty, unjust enrichment, and quasi-estoppel. CBI filed a counterclaim against ABI for breach of contract, unjust enrichment, constructive trust, and violation of the Uniform Trade Secrets Act.

After the district court resolved some of the parties' claims on summary judgment, the parties went to trial. ABI presented three claims: (1) fraud by Rammell, Christa's estate, and CBI; (2) breach of contract by CBI; and (3) breach of express warranty by CBI. For the fraud claim, ABI alleged that Rammell and Christa individually and on behalf of CBI knowingly made fraudulent material representations to induce ABI into the purchase agreement with CBI. Those representations were that (1) CBI owned a library of files worth at least one million dollars; (2) CBI owned proprietary software unique to CBI's business; and (3) the payments would cease in the event of Christa's death within the eight-year payment period. For the breach of contract claim, ABI alleged that CBI promised to assign or sell to ABI the library of files and proprietary software in exchange for the payments. For the breach of warranty claim, ABI alleged that CBI expressly warranted that CBI could transfer ownership of the library of files and proprietary software to ABI and that these warranties were material terms of the contract. CBI presented a breach of contract counterclaim against ABI. CBI alleged that ABI breached the purchase agreement by failing or refusing to continue the monthly $12,000 payments after Christa's death.

April offered testimony on the value of the business at trial. She valued the furniture and office equipment at $3,500 and the PageMaker software at $600. In her opinion, the value of the business when it became ABI in 2004 was $250,000, excluding the equipment and PageMaker software. That value included mentoring by Christa, such as "[g]etting up to speed on the processes, the production work flow . . . [and] things that had changed." April placed "no value" on the library of files. She did not believe that she could "ethically" sell the business to a third party because she did not believe that she had anything to sell without ownership of the files. She could not "in good faith" guarantee a third party that Rutter would work with them and "sell

4

anything tangible to somebody." She also explained that she could not successfully sell the business like Christa sold it to her because she bought the business with the belief that she could charge Rutter for return of the files and now she knows that she would have to return the files at no charge.

Rammell also testified at trial. He denied making an agreement with April that ABI's payments would cease on anyone's death. He testified that he told April that she could sell the business in the same way that he and Christa were selling it to her. He explained that he calculated the $12,000 monthly payments to obtain a little over one million dollars to retire and provide an income for April. He acknowledged that CBI would not be worth anything if Rutter took its business elsewhere, but stated that ABI would have to pay CBI even if Rutter left. Rammell agreed that it was possible that Christa and April could have had separate oral agreements without his knowledge.

Rammell denied that he indicated to April that the files were worth at least one million dollars. He testified that he never represented to April that the files had any value outside of the business. He stated that the files had no value without Christa. He explained, "If the files would have been worth a million dollars, I'd have just sold the files for a million dollars, put it in the bank, and discontinued the business." He was not aware that April ever raised the issue of ownership of the library of files with him. He also testified that he "came up with the value of the business that they were selling to April." He valued the business by considering only "what [he] wanted to get out of the business and what April could afford to pay." To contradict these statements, ABI had Rammell read his deposition testimony. In his deposition, he testified that he did not value the business to April and he had "no understanding" of whether CBI owned a library of files and "no way to evaluate" the files. ABI then had Rammell read his deposition testimony from the second day of his deposition, after Rammell had met with his attorney, wherein he testified that he believed CBI owned the library of files and that he communicated to April that the files were part of the business's value. Regarding the proprietary software, Rammell testified that he was "not sure" if he told April that the proprietary software was written by Christa, but he knew that April knew it was written by Christa. He later testified that he did not tell April that Christa wrote the software and he never heard Christa tell that to April. Rammell also testified that he was aware that CBI at one time owned intellectual property or trade secrets because "all of the things that Christa added to her programs are a trade secret to

5

her," but then he read his deposition testimony denying knowledge of any intellectual property or trade secrets.

Defendants also called Stephan Douglas Hall, who explained that about five to ten years ago Christa gave a presentation at the Idaho Falls Exchange Club about her typesetting business. Although his memory was "vague," he remembered that Christa said something about developing software or writing software. He testified that he asked Christa if she developed proprietary software and she eventually responded that she used an off-the-shelf publishing software package. Hall knew April was present during the presentation, but he was not sure if April heard his question or Christa's response.

Among other exhibits, the jury was provided a copy of the lease agreement. The jury was instructed that the agreement was "not an enforceable contract," but "may be evidence as to the actual agreement entered into by the Parties." The jury also was provided an exhibit of the QuickBooks register of the payments ABI made to CBI and a 2004 cash flow statement prepared by Rammell for April during the parties' 2001 meeting to purchase the business.

On April 13, 2012, the jury returned a verdict in favor of ABI on all claims. The jury determined that ABI's fraud claim was not barred by the statute of limitations and that Rammell, Christa's estate, and CBI each committed fraud. The jury awarded $354,000.00 in damages. For the breach of contract and express warranty claims, the jury determined that these claims also were not barred by the statute of limitations. The jury verdict form divided these claims by the subjects "proprietary software" and "library of files." The jury determined that CBI "breach[ed] its contact and/or warranty" with ABI "as to a library of files" and awarded $190,013.00 in damages. Next the jury determined that CBI "breach[ed] its contact and/or warranty" with ABI "as to proprietary software," but awarded no damages. In total, Rammell, Christa's estate, and CBI were jointly and severally liable for $354,000 in damages for fraud, and CBI was liable for an additional $190,013 in damages for breach of contract and breach of warranty as to the library of files, a total of $544,013 against CBI. For Defendants' counterclaim, the jury determined that ABI did not breach its contract with CBI.

Defendants moved for JNOV or a new trial in the alternative. The district court concluded that the evidence was sufficient to support the jury verdict except as to ABI's fraud claim against Christa's estate. As such, the district court dismissed the fraud claim against Christa's estate. In addition, the district court granted Defendants' motion for a new trial on the

6

issue of damages unless ABI accepted a remittitur to reduce the damages against CBI by $90,113. The district court stated that ABI paid CBI $708,000 to purchase the business, but April testified that the business was worth $254,100. Thus, the district court concluded that the total possible amount of damages incurred by ABI was $453,900, the amount paid by ABI less the business' worth. By awarding ABI $544,013 in damages against CBI, the district court calculated that the jury exceeded the total amount of damages by $90,113. The district court determined that the excess amount was inexplicable and based on passion and prejudice. ABI accepted the district court's remittitur. Defendants appeal to this Court.

### III. ISSUES ON APPEAL

1.  Whether the district court erred in denying Defendants' motion for a directed verdict and JNOV on ABI's fraud claims.

2.  Whether the district court erred in issuing a remittitur and denying in part Defendants' motion for a directed verdict and JNOV on ABI's breach of contract and breach of warranty claims.

3.  Whether the district court erred in denying Defendants' motion for JNOV on ABI's breach of contract and breach of warranty claims due to the statute of limitations.

4.  Whether the district court abused its discretion by admitting April's testimony regarding Christa's will.

5.  Whether the judgment on Defendants' counterclaim should be reversed or remanded for a new trial.

6.  Whether either Defendants or ABI is entitled to attorney's fees on appeal.

### IV. STANDARD OF REVIEW

"We review a trial court's decision whether to admit or exclude evidence under an abuse of discretion standard." *Harris, Inc. v. Foxhollow Const. & Trucking, Inc.*, 151 Idaho 761, 770, 264 P.3d 400, 409 (2011). "To determine whether a trial court has abused its discretion, this Court considers whether the district court: (1) perceived the issue as one of discretion; (2) acted within the outer boundaries of that discretion consistent with applicable legal standards; and (3) reached its decision through the exercise of reason." *Hansen v. Roberts*, 154 Idaho 469, 472, 299 P.3d 781, 784 (2013).

"When reviewing a decision to grant or deny a motion for a directed verdict, this Court applies the same standard the trial court applied when originally ruling on the motion." *Enriquez v. Idaho Power Co.*, 152 Idaho 562, 565, 272 P.3d 534, 537 (2012). The Court determines

> whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in

7

favor of the party opposing the motion for a directed verdict. This test does not require the evidence be uncontradicted, but only that it be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. Where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied.

*Id.* (internal citations and quotations omitted).

When reviewing a decision to grant or deny a motion for JNOV, this Court also applies the same standard as the trial court. *Athay v. Rich Cnty.*, 153 Idaho 815, 825, 291 P.3d 1014, 1024 (2012).

A jury verdict must be upheld if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury. In reviewing a grant or denial of a motion for JNOV the court may not reweigh evidence, consider witness credibility, or compare its factual findings with that of the jury. The court reviews the facts as if the moving party had admitted any adverse facts, drawing reasonable inferences in favor of the non-moving party.

*Id.* (quoting *Hall v. Farmers Alliance Mut. Ins. Co.*, 145 Idaho 313, 324, 179 P.3d 276, 287 (2008)).

## V. ANALYSIS

### A.     The District Court Did Not Err In Denying Defendants' Motion For A Directed Verdict And JNOV On ABI's Fraud Claims.

ABI pursued its fraud claim based on three representations: (1) CBI owned a library of computer files worth at least one million dollars; (2) CBI developed proprietary software; and (3) ABI could cease its monthly payments to CBI if Christa died before ABI completed the payments. The nine elements of a fraud claim are: "(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury." *Bank of Commerce v. Jefferson Enters., LLC*, 154 Idaho 824, 833, 303 P.3d 183, 192 (2013) (quoting *Chavez v. Barrus*, 146 Idaho 212, 223, 192 P.3d 1036, 1047 (2008)). "Fraud is to be determined from all the facts and circumstances of the case." *Penn Mut. Life Ins. Co. v. Ireton*, 57 Idaho 466, 482, 65 P.2d 1032, 1039 (1937).

1.     There was sufficient evidence for the jury to conclude that Defendants committed fraud through their representation to ABI that ABI purchased from CBI a library of computer files worth at least one million dollars.

Defendants argue that any representation by Rammell or CBI as to the value or ownership of the library of files was an opinion, not a fact. This Court concludes that Rammell's and CBI's representations fall into an exception to the general rule that fraud cannot be based on an opinion or prediction. Defendants also argue that ABI failed to show any damages from the fraudulent statements. This Court concludes that ABI presented sufficient evidence of damages to the jury.

<blockquote>

a. *It was reasonable to conclude from the evidence that Rammell and CBI knowingly made false representations with the intent to induce ABI into purchasing CBI.*
</blockquote>

In general, "the representation forming the basis of a claim for fraud must concern past or existing material facts." *Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 615, 114 P.3d 974, 985 (2005) (quoting *Magic Lantern Prods., Inc. v. Dolsot*, 126 Idaho 805, 807, 892 P.2d 480, 482 (1995)). "Opinions and predictions cannot form the basis of a fraud claim because they do not speak to matters of fact." *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 601, 150 P.3d 288, 294 (2006). Thus, "a representation consisting of promise or a statement as to a future event will not serve as basis for fraud, even though it was made under circumstances as to knowledge and belief which would give rise to an action for fraud had it related to an existing or past fact." *Sharp v. Idaho Inv. Corp.*, 95 Idaho 113, 122, 504 P.2d 386, 395 (1972). Similarly, "[o]pinions or predictions about the anticipated profitability of a business are usually not actionable as fraud." *Id.*

The Court has recognized two exceptions to the general rule that fraud cannot be based on an opinion or prediction of future events. *Gillespie v. Mountain Park Estates, LLC*, 142 Idaho 671, 673–74, 132 P.3d 428, 430–31 (2006). One exception exists "where a false prediction or opinion is given with the intent to mislead." *Country Cove Dev.*, 143 Idaho at 601, 150 P.3d at 294. Under this exception, the speaker makes "the promise without any intent to keep it, but to induce action on the part of the promisee." *Gillespie*, 142 Idaho at 674, 132 P.3d at 431. For example, this exception is triggered "where a speaker gives an opinion when he is aware of facts incompatible with such opinion . . . made with the intention of deceiving or misleading." *Country Cove Dev.*, 143 Idaho at 601, 150 P.3d at 294 (quoting *Jordan v. Hunter*, 124 Idaho 899, 907, 865 P.2d 990, 998 (Ct. App. 1993)). Similarly, this exception occurs "[w]here actual value is known and false statements are knowingly made with intention to deceive, and do deceive the parties to whom they are made . . . . Such statements are not expressions of opinion but are

9

statements of material facts." *Fox v. Cosgriff*, 66 Idaho 371, 380, 159 P.2d 224, 227 (1945). The second exception exists where "the promise was accompanied by statements of existing fact which show the promisor's ability to perform the promise and those statements were false." *Gillespie*, 142 Idaho at 674, 132 P.3d at 431.

In this case, there was sufficient evidence for the jury to conclude that Rammell's and CBI's representations that CBI owned a library of files worth at least one million dollars were more than mere opinions or predictions. These representations fall under the first exception for false opinions with the intent to mislead. The evidence showed that Rammell and Christa valued the business at $40,000 to their attorney in 1999, and they believed that the business had little value without Christa. The evidence also showed that Rammell stated in his deposition prior to consulting with his attorney that he had no understanding of whether CBI owned the files. Yet, according to April, Rammell and Christa told her that she was purchasing from CBI a library of files worth at least one million dollars. In addition, the evidence showed that one of Rammell and Christa's motives for the sale was to secure a retirement income. Based on this evidence presented at trial, reasonable minds could conclude that Rammell and Christa, motivated to secure a retirement income, provided a false opinion of the value and ownership of the library of files with the intent to induce April to purchase the business.

      b.      *It was reasonable to conclude from the evidence that ABI had a resultant injury and incurred damages from Rammell's and CBI's fraudulent statements.*

"In order to secure relief on a basis of fraud, the party seeking redress must have been damaged, injured or harmed as a result of the asserted fraud. A false representation which causes no loss is not actionable." *Bryant Motors, Inc. v. Am. States Ins. Cos.*, 118 Idaho 796, 800, 800 P.2d 683, 687 (Ct. App. 1990) (citing *Kloppenburg v. Mays*, 60 Idaho 19, 88 P.2d 513 (1939)). The amount of damages "must be proven with reasonable certainty." *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 740, 152 P.3d 604, 611 (2007). "'Reasonable certainty' does not mean that damages need to be proven with 'mathematical exactitude,' but it does require a plaintiff to prove that damages are not merely speculative." *Harris*, 151 Idaho at 770, 264 P.3d at 409 (quoting *Griffith*, 143 Idaho at 740, 152 P.3d at 611).

In fraud claims, Idaho courts have applied the "out-of-pocket" rule in measuring damages, but have also recognized the existence of a different measure of damages referred to as the "benefit of the bargain" rule. *Watts v. Krebs*, 131 Idaho 616, 621, 962 P.2d 387, 392 (1998).

10

The benefit of the bargain rule measures damages "by the difference between the value of the thing actually received and the value it would have had if it were as it was fraudulently represented to be." *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 217, 923 P.2d 456, 462 (1996) (quoting *Nelson v. Armstrong*, 99 Idaho 422, 427 n.1, 582 P.2d 1100, 1105 n.1 (1978)). The out-of-pocket rule "limits the recovery of damages to the difference between" the real value of the thing actually received "and the price paid or contracted for." *Id.* at 217, 923 P.2d at 462 (quoting *Shrives v. Talbot*, 91 Idaho 338, 345, 421 P.2d 133, 140 (1966)).

The benefit of the bargain and out-of-pocket rules are not exclusive. *Id.* "The underlying principle is that the victim of fraud is entitled to compensation for every wrong which is the natural and proximate result of the fraud. The measure of damages which should be adopted under the facts of a case is the one which will effect such result." *Weitzel v. Jukich*, 73 Idaho 301, 308, 251 P.2d 542, 546 (1952).

In this case the jury was instructed to "determine the amount of money that will reasonably and fairly compensate ABI for any damages provided by the evidence to have resulted from the breach or fraud." The jury also was instructed against awarding duplicative damages.

The Court finds that April's testimony provided sufficient evidence of ABI's damages from Defendants' fraud. April testified that she could not sell the business because, in her opinion, it had no value without ownership of the library of files. The evidence showed that ABI agreed to pay CBI $1,152,000 over eight years, and paid only $708,000 due to Christa's death. April stated that the value of CBI when it transitioned to ABI was $250,000 plus $600 for the PageMaker software and $3,500 for office equipment, which totals to $254,100. Defendants offered no evidence to refute or challenge the $254,100 value. Taking the difference of the $254,100 value with the $708,000 payment, April testified that ABI had a claim for "about $455,000," an out-of-pocket calculation.

Defendants showed that ABI recouped the money it paid for CBI and that April was successfully running the business. Defendants also showed that April believed that she would sell the files with the business if she ever sold ABI. In other words, she would not sell the files independently. She acknowledged that CBI told her she could sell the business like it was sold to her: to a third party to continue business with Rutter with the same files. April agreed that she had not tried to sell the business.

11

Defendants focus on ABI's ability to sell the business in the future as the measure of damages. They claim that ABI was not injured by any fraudulent statements because no evidence showed that ABI could not sell the business to a third party in the way that CBI was sold to her. The flaw in Defendants' argument is their assumption that a future sale is the only way to calculate damages. Based on the evidence presented at trial, the jury could have calculated damages in other ways. The jury reasonably could have concluded that ABI's injury was not in its inability to sell the files independent of the business, but in its purchase of a business worth much less than its represented value. Put another way, the jury reasonably could have determined that ABI was injured because CBI knowingly overcharged ABI, and, although ABI profited from the business, ABI still overpaid based on CBI's misrepresentations. In sum, the evidence showed that ABI believed it was purchasing a business with property worth at least one million dollars, but learned later that the business was worth only $254,100 without any ownership rights to the represented property.

The resolution of this damages issue, like many other issues in this case, depended on which witnesses the jury found credible. Based on the evidence, it was reasonable for the jury to conclude April's testimony of the business' value was credible, especially considering that Defendants offered no contrary evidence. The Court concludes that there was sufficient evidence for the jury to calculate an award of damages based on ABI's purchase of a business with a misrepresented value.

Based on the above reasons, the Court holds that the district court did not err in denying Defendants' motion for a directed verdict and JNOV on the fraud claims because reasonable minds could conclude from the evidence presented at trial that ABI was defrauded by Rammell and CBI regarding their purported ownership of a library of files worth at least one million dollars. This Court declines to review whether the evidence also was sufficient for the jury to find fraud based on the proprietary software because there was sufficient evidence of fraud based solely on the library of files.

**B.     The District Court Did Not Err In Issuing A Remittitur And Denying In Part Defendants' Motion For A Directed Verdict And JNOV On ABI's Breach of Contract and Breach Of Warranty Claims.**

For the breach of warranty claims, the jury was instructed that ABI had the burden to prove: (1) CBI made a warranty as part of the sale of the business; (2) CBI breached the

warranty; (3) ABI incurred damage due to the breach; and (4) the amount of damages. The jury instruction explained "express warranty" as:

> An express warranty is a warranty created by words or actions of the seller. Express warranties may be created by affirmation of fact or promises made by the seller to the buyer relating to the goods that become the basis of the bargain; (2) a description of the goods that becomes part of the bargain; (3) a sample or model made part of the basis of the bargain. . . . An affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

This explanation of express warranty mirrors I.C. § 28-2-313. "Whether a statement by the seller was an express warranty is a question of fact." *Keller v. Inland Metals All Weather Conditioning, Inc.*, 139 Idaho 233, 237, 76 P.3d 977, 981 (2003).

The two warranties at issue at trial pertained to CBI's ability to transfer to ABI (1) ownership of the library of files and (2) the proprietary software. The jury found that both express warranties were breached by CBI.

Regarding the library of files, there was sufficient evidence for the jury reasonably to conclude that CBI warranted more than a mere affirmation of the value of the files. The evidence showed that CBI informed ABI that ABI would have ownership of files worth at least one million dollars by purchasing the business. Reasonable minds could conclude that this warranty was more than the mere value of the business because ownership of the library of files represented to ABI that it had some security in its business relationship with Rutter. The evidence showed that ABI believed it could charge Rutter for return of the files if Rutter ceased doing business with ABI. The promise of ownership also suggested to ABI that it could sell the files to a third party with the business and, as such, those files had an additional value separate from the other business assets. Based on the evidence presented at trial, reasonable minds could conclude that CBI made an express warranty to ABI regarding the library of files and this warranty was a basis of the purchase agreement.

Regarding the proprietary software, there also was sufficient evidence for the jury reasonably to conclude that CBI warranted that ABI would own unique software developed by CBI exclusively for servicing Rutter's publications. April testified that Christa informed her that she created proprietary software to work with Rutter. The evidence showed that ABI believed it would be purchasing this software to run the business efficiently and successfully without spending additional time and resources to recreate the software for Rutter. The evidence also

showed that ABI knew it took CBI many years to develop the macros and commands specific to Rutter's typesetting needs. Like the ownership of the library of files, the ownership of the propriety software gave ABI security in its business relationship with Rutter. Therefore, the jury reasonably could have concluded that obtaining ownership of the proprietary software was an express warranty that formed a basis of the purchase agreement.

Further, the evidence was sufficient for the conclusion that CBI breached both of these express warranties. Defendants focus on ABI's ability to sell the files to a third party, but Defendants ignore April's testimony that she believed she could charge Rutter for return of the files, which indicated that the files had value outside of a sale of the business. Additionally, reasonable minds could conclude that the evidence showed that ABI believed that Rutter would want to approve the purchaser, but ABI still had the authority to sell the files with the caveat that Rutter may not continue to do business with that purchaser. As to the proprietary software, the evidence showed that CBI breached its warranty because CBI did not develop any unique propriety software. Based on the evidence presented, reasonable minds could determine that CBI breached the express warranties.

1. The district court corrected any error in the jury's calculation of damages by issuing a remittitur.

In this case, the jury determined that ABI incurred $190,013 in damages due to CBI's "breach of contract and/or warranty as to the library of files, not otherwise awarded [for fraud]," in addition to the $354,000 damages amount for fraud. The jury awarded no additional damages for CBI's breach of contract and breach of warranty due to the proprietary software.

The district court reduced the damages award for breach of contract and breach of warranty as to the library of files by $90,113 because the district court determined that that sum was in excess of the total amount of damages shown by ABI at trial. ABI accepted the remittitur. As such, CBI was liable for $99,900 in damages for breach of contract and breach of warranty and jointly and severally liable for $354,000 for fraud. The damages against CBI totaled to $453,900, which was the difference between the $708,000 sum paid by ABI and the $254,100 value of the business.

"A new trial is warranted where the jury's determination of damages appears to have resulted from passion or prejudice." *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, 248, 245 P.3d 992, 1000 (2010) (citing *Quick v. Crane*, 111 Idaho 759, 769–70, 727 P.2d 1187, 1197–98 (1986); Idaho Rule of Civil Procedure (I.R.C.P.) 59(a)(5)).

14

> In determining whether damages are excessive or inadequate, the district court must weigh the evidence and compare the jury award with the award that it would have imposed. "If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand."

*Kuhn*, 150 Idaho at 248, 245 P.3d at 1000 (quoting *Quick*, 111 Idaho at 768, 727 P.2d at 1196). An alternative to granting a new trial based on excessive damages is a remittitur. *Quick*, 111 Idaho at 770, 727 P.2d at 1198. Remittiturs are limited to correcting errors in damages. *Id.* Remittiturs are improper "if the verdict was the result of passion or prejudice to such an extent that such passion or prejudice may have infected the jury's decision on liability as well as damages." *Id*. "Hence, the amount by which the trial judge offers to reduce the damage award is a discretionary decision that is inexorably linked to the exercise of discretion in ruling on a new trial motion under I.R.C.P. 59(a)(5)." *Id.*

The Court first highlights that it was reasonable for the jury to conclude, based on the evidence, that ABI incurred damages from the breach of contract and express warranty claims. Reasonable minds could determine that ABI agreed to purchase the business for $1,152,000 because CBI warranted that ABI would receive a library of files worth at least one million dollars and unique proprietary software developed by Christa over many years. The evidence then showed that ABI learned that CBI did not create any software after ABI paid $420,000 and ABI learned that CBI did not own the library of files after ABI paid $708,000. April's testimony, which was not contradicted by Defendants, provided that the actual value of the business at the time of the transition to ABI was $254,100. The jury also was provided with ABI's documentation of payments to CBI, Rammell's projected business cash flow, and testimony regarding the profits and expenses of ABI. Due to the conflicting testimony and credibility determinations, there were multiple means by which the jury could have calculated and divided damages in a reasonable manner based on sufficient evidence.

Although there was sufficient evidence on the issue of damages for the breach of contract and breach of warranty claims, the district court concluded that the jury awarded excessive damages based on passion and prejudice. As such, the district court issued a remittitur for the breach of contract and breach of warranty claims as to the library of files. This decision was reasonable based on the evidence presented at trial, and it corrected any error in the jury verdict. The Court recognizes that the jury could have been influenced by passion and prejudice due to the evidence presented at trial. However, the jury's passion and prejudice does not invalidate the

15

jury's verdict. There was sufficient evidence of Defendants' liability for breach of contract and breach of warranty to avoid any infection from the jury's passion and prejudice as to damages. Many issues in this case turned on the credibility determinations made by the jury. Reasonable minds could conclude based on the evidence that Defendants were liable for the breach of contract and breach of warranty claims without any influence of passion or prejudice. The Court concludes that any error in the jury's award of damages for breach of contract and breach of warranty as to the library of files was properly resolved by the district court's remittitur.

In conclusion, the Court holds that the district court properly ruled on Defendants' motion for a directed verdict and JNOV regarding the breach of contract and breach of warranty claims.

**C.      The District Court Did Not Err In Denying Defendants' Motion For JNOV On ABI's Breach Of Contract And Breach Of Warranty Claims Due To The Statute Of Limitations.**

ABI filed its suit on May 8, 2009, and the jury concluded that ABI's breach of contract and breach of warranty claims were not barred by the applicable statute of limitations. Based on the evidence presented at trial, the Court finds that reasonable minds could have reached a similar conclusion to that of the jury.

For the claims based on the library of files, the jury was instructed that ABI had four years to bring the claims and that the claims began "to run from the time ABI knew of the Rutter Group's claim of ownership interest in the library of files." The evidence reasonably supports a conclusion that April interpreted the caveat that Rutter had to approve the sale of the business to a third party to mean that Rutter had to approve the purchaser, and not necessarily that CBI or ABI did not have ownership of the files. Additionally, the jury could have concluded that "ownership" included not only ABI's ability to sell the files, but also ABI's ability to charge Rutter for return of the files if Rutter ceased to do business with ABI. According to April, she did not learn until late 2008 that ABI had no ownership of the files and could not charge Rutter to return the files. Therefore, there was sufficient evidence for the jury to conclude that ABI had knowledge of Rutter's ownership in late 2008 and filed its suit within the four year statute of limitations.

For the claims based on the proprietary software, the jury was instructed that the claims began "to run from the time the Parties entered into the contract," but "estoppel may apply to bar the application of the statute of limitations to this claim." The district court further instructed the

16

jury on the estoppel elements. The evidence showed that April waited to read the manual until November of 2006, but also that April relied on an information technology employee and Christa as a consultant. The evidence also showed that the macros and commands in PageMaker took years to develop. Additionally, April testified that Christa told her that she created the proprietary software. April's belief that Christa created the software was further supported by Christa's statements at the Idaho Falls Exchange Club, which were corroborated by Hall. This evidence supports a conclusion that it would be reasonable for April to believe Christa developed the proprietary software and to wait to read the manual until necessary. Moreover, the reasonableness of ABI's actions was a determination for the jury. Based on the evidence presented, it was reasonable for the jury to conclude that estoppel barred the application of the statute of limitations and that ABI acted with due diligence in asserting its claim.

**D.     The District Court Did Not Abuse Its Discretion By Admitting April's Testimony Regarding Christa's Will.**

ABI inquired into April's inheritance during April's testimony regarding her meeting with Rammell and Christa about the purchase of CBI. Defendants objected to this line of questioning pursuant to Idaho Rule of Evidence (I.R.E.) 601. The district court took up Defendants' objection outside the presence of the jury. The district court recognized an overlap between ABI's claim against Christa's estate for fraud and ABI's claims against CBI for fraud, breach of contract, and breach of warranty. The district court determined that the rules of evidence permitted April's testimony about Christa's will as it related to ABI's claims against CBI, but not as it related to ABI's fraud claim against Christa. Upon the jury's return to the courtroom, the district court gave a limiting instruction before April continued her testimony and advised the jury that CBI "is a different entity" than Christa's estate. The district court instructed the jury that April's testimony of Christa's will was not admissible evidence for purposes of supporting a claim against Christa's estate. April then testified about statements Christa made to her about April's inheritance, her ownership of the business, and payment cessation upon Christa's death. The district court also provided a jury instruction regarding this testimony for deliberations:

> In this case, certain evidence was admitted for a limited purpose. Specifically, the testimony of April Beguesse as to statements made by Christa Beguesse may not be considered as evidence in supporting a claim against the Estate of Christa Beguesse. Such evidence however may be used for any other purpose.

17

Defendants challenge the district court's admission of April's testimony. They argue that April's testimony was inadmissible under I.R.E. 601 and irrelevant. Each issue will be addressed in turn.

    1.    <u>I.R.E. 601(b) does not prohibit April's testimony regarding Christa's will because ABI pursued claims against parties other than Christa's estate.</u>

I.R.E. 601(b) "bars (1) certain persons from testifying (2) in specified actions (3) as to certain communications." *Montgomery v. Montgomery*, 147 Idaho 1, 8, 205 P.3d 650, 657 (2009) (quoting *In re Estate of Keeven*, 110 Idaho 452, 460, 716 P.2d 1224, 1232 (1986)). The rule "prohibit[s] a party making a claim against an estate from testifying as to any unwritten communication with the deceased." *Lunders v. Estate of Snyder*, 131 Idaho 689, 698–99, 963 P.2d 372, 381–82 (1998). "I.R.E. 601(b) is virtually identical to I.C. § 9-202(3),[2] the so-called 'Deadman's Statute.'" *Montgomery*, 147 Idaho at 7–8, 205 P.3d at 656–57. "Given the virtual identity of the rule and statute," the Court applies the same analysis to the evidentiary rule and the statute. *Id.* at 8, 205 P.3d at 657. "Application of a dead man's statute is reviewed for abuse of discretion." *Lunders*, 131 Idaho at 699, 963 P.2d at 382.

The Court has "not interpreted this provision so broadly as to bar testimony concerning a state of affairs or matters of fact occurring before a decedent[']s death." *Montgomery*, 147 Idaho at 8, 205 P.3d at 657. Additionally, I.R.E. 601(b) "does not apply where . . . the action is not against the executor or administrator of an estate and the claim does not represent a demand against the estate." *Rowan v. Riley*, 139 Idaho 49, 54, 72 P.3d 889, 894 (2003). Nor does it apply "when the testimony is being offered to defend against a counterclaim." *Lunders*, 131 Idaho at 699, 963 P.2d at 382. Thus, the district court did not abuse its discretion by allowing April's testimony because I.R.E. 601(b) allows a party to testify to unwritten communication with the deceased if the party's claim is not against the estate. For example, in *Argyle v. Slemaker* the plaintiff sought to testify regarding certain communications with the deceased in a property dispute. 99 Idaho 544, 545–46, 547, 585 P.2d 954, 955–56, 957 (1978). The plaintiff brought a claim against the decedent's estate and also the decedent's grantee, a third party corporation. *Id.* at 545–46, 585 P.2d at 955–56. "An additional reason" the Court held that the plaintiff's testimony was not barred was because the deadman's statute "prohibits testimony introduced against the estate of a deceased person," but "does not prohibit the admissibility of this evidence as against . . . a corporation." *Id.* at 547–48, 585 P.2d at 957–58. Similarly, April's testimony

---

[2] "I.C. § 9-202(3) has a comma after the phrase 'estate of a deceased person,' whereas that comma is omitted in I.R.E. 601(b)." *Montgomery*, 147 Idaho at 8 n.1, 205 P.3d at 657 n.1.

was prohibited as to her fraud claim against Christa's estate, but her testimony was not prohibited as to her claims against CBI. The district court recognized this distinction with the limiting instruction. Therefore, this Court concludes that the district court perceived the admissibility of April's testimony as one of discretion, acted within the boundaries of that discretion consistent with I.R.E. 601, and reached its decision to admit the evidence through an exercise of reason. There was no error in admission of this testimony.

2.      April's testimony regarding Christa's will was relevant to ABI's claims against CBI.

"The question of relevancy is not a discretionary matter as there is no issue of credibility or finding of fact for the trial court to resolve prior to deciding to admit or reject the evidence." *Lubcke v. Boise City/Ada Cnty. Hous. Auth., Corp.*, 124 Idaho 450, 466, 860 P.2d 653, 669 (1993). As such, the Court reviews a trial court's relevancy decision de novo. *Id.* "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. "All relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." I.R.E. 402.

Defendants argue that April's testimony regarding Christa's will was irrelevant because (1) fraud cannot be premised on the promise to make a will and (2) the district court granted Defendants a directed verdict on the fraud claim based on CBI's representation that payments would cease upon Christa's death if within the eight-year purchase agreement. First, ABI's fraud claim against CBI was not premised on the promise to make a will, but rather on the representation by CBI that ABI could cease payments to CBI if Christa died within eight years of the business purchase. As discussed above, fraud may be premised on a promise if the speaker makes the promise with no intention to keep it, but to induce the promisee. *See Gillespie v. Mountain Park Estates, LLC*, 142 Idaho 671, 673–74, 132 P.3d 428, 430–31 (2006). In this case, the jury could have considered April's testimony of Christa's will as evidence to support ABI's claim that CBI promised ABI it could cease payments if Christa died within eight years to induce ABI to purchase the business, even though CBI had no intention of allowing ABI to cease payments. In addition, April's testimony was relevant to the jury's determination of terms of the oral contract between ABI and CBI. Second, the district court did not grant Defendants a directed verdict as to a fraud claim based on a representation regarding a promise of payment cessation upon Christa's death. In fact, the district court stated that it was not granting a directed

19

verdict on that claim. Rather, the district court granted Defendants a directed verdict as to ABI's fraud claim that CBI's assets would be bequeathed to April upon Christa's death. Thus, the district court barred ABI from presenting evidence of Christa's will to prove a fraudulent representation of the existence of a will, but allowed ABI to present that same evidence to support a claim that CBI fraudulently represented the conditions for ABI to cease payment. April's testimony regarding Christa's will was admissible and relevant to ABI's breach of contract and fraud claims against CBI.

**E.     The Court Declines To Review The Jury Verdict On Defendants' Counterclaim.**

Defendants assert that the Court should reverse the jury's verdict on CBI's counterclaim against ABI or award Defendants a new trial on this claim, but Defendants did not specifically move for JNOV or a new trial on the counterclaim. Without the issue adequately raised in Defendants' motion below, the Court declines to address this issue for the first time on appeal. *Garner v. Bartschi*, 139 Idaho 430, 436, 80 P.3d 1031, 1037 (2003).

**F.     The Court Awards ABI Attorney's Fees On Appeal.**

Both parties seek attorney's fees on appeal pursuant to I.C. § 12-120(3), which "provides for attorney fees to the prevailing party in a civil action to recover on 'any commercial transaction.'" *De Groot v. Standley Trenching, Inc.*, No. 39406, 2014 WL 1266104, at *10 (Idaho March 28, 2014) (quoting I.C. § 12-120(3)). The parties agree that this case arises from a commercial transaction—the purchase agreement between ABI and CBI for an ongoing business. As the prevailing party, the Court awards ABI attorney's fees pursuant to I.C. § 12-120(3).

## VI. CONCLUSION

The Court affirms the judgment of the district court. Attorney's fees and costs on appeal to ABI.


Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.

20