# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35891

| | | |
|---|---|---|
| DAVID F. CAPPS, | ) | |
| | ) | Boise, August 2010 Term |
| Plaintiff-Appellant, | ) | |
| | ) | 2010 Opinion No. 102 |
| v. | ) | |
| | ) | Filed: October 4, 2010 |
| FIA CARD SERVICES, N.A., fna MBNA | ) | |
| AMERICA BANK, N.A., | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Idaho County. The Hon. John H. Bradbury, District Judge.

The judgment of the district court is <u>affirmed</u>.

David F. Capps, Kamiah, appellant pro se.

Wilson & McColl, Boise, for respondent.

---

EISMANN, Chief Justice.

This is an appeal from a summary judgment for the amount owing on a credit card account. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

David F. Capps (Cardholder) entered into a credit card agreement with MBNA America Bank, N.A. (Bank), whereby it agreed to extend a revolving line of credit to Cardholder for cash advances of goods and services. Bank is now known as FIA Card Services, N.A. Cardholder did not make payments due under the credit card agreement, and Bank obtained an arbitration award against him in the sum of $15,448.35. He then commenced this action against Bank contending that there was no agreement to arbitrate and that by obtaining the arbitration award Bank committed fraud, negligence, and a violation of Cardholder's civil rights, all entitling him to damages in the sum of $25,000. Bank answered and counterclaimed, seeking a judgment in

the amount of the arbitration award either by judicially confirming the award or by awarding damages for breach of the credit card agreement or of an account stated.

On May 19, 2008, Bank filed a motion for summary judgment on its damages claims. It supported the motion by an affidavit of an agent for Bank who stated that Bank had advanced the payment of goods and services on behalf of Cardholder, that Bank had sent Cardholder monthly statements indicating the account balance due and owing, that as of July 2005 the amount owing was $12,459.74, and that there have been no payments since December 6, 2004. Attached to the affidavit were true and correct copies of statements for the months of July through November 2002, December 2003, January through December 2004, and January through July 2005. The last statement showed a balance due of $12,459.74. Based upon this affidavit and Cardholder's failure to respond to requests for admissions, Bank contended that it was entitled to summary judgment for breach of contract under the original credit card agreement and for breach of contract under an account stated based upon Cardholder's failure to object to the monthly credit card statements.

In response, Cardholder filed a document listing various grounds upon which he opposed Bank's motion for summary judgment. Attached to that document was Cardholder's affidavit, to which he had attached: (a) an unsigned affidavit of his expert; (b) a copy of a prospectus and prospectus supplement (Prospectus), both dated October 2005, which he stated were attached to a document entitled "MBNA Credit Card Master Note Trust" that he had printed from an internet website maintained by the Securities and Exchange Commission; and (c) a document entitled "Second Amended Restated Pooling and Servicing Agreement" (Pooling Agreement) that Cardholder stated he had obtained during discovery in another lawsuit. Cardholder contended that the Pooling Agreement showed that Bank had transferred all of its interest in its credit card account with Cardholder and it was therefore not the real party in interest.

Cardholder also filed a motion to permit him to amend his discovery responses so that Bank's requests for admissions would not be deemed admitted due to Cardholder's failure to respond. The district court granted that motion, and Cardholder then filed responses to the discovery.

Bank's motion for summary judgment was heard on June 26, 2008. In its decision granting the motion for summary judgment, the district court held that the documents attached to

Cardholder's affidavit were inadmissible and that his various defenses were therefore unsupported by any evidence. The court then granted Bank's motion for summary judgment.

On August 5, 2008, Cardholder filed a motion for reconsideration which he supported by his affidavit, to which were attached two letters he had sent disputing or questioning the amount owing. He also filed a motion for a continuance to obtain affidavits to establish his defenses. About a month later, Cardholder filed a supplemental motion to continue, a motion to admit the Pooling Agreement pursuant to Idaho Rule of Evidence 1004(3), and a motion to vacate the summary judgment on the grounds that Bank had failed to produce the Pooling Agreement and that Idaho Rule of Evidence 1008(c) created a jury issue as to whether the copy of the Pooling Agreement submitted by Cardholder correctly reflected the contents of the original.

On August 14, 2008, Bank filed a motion to dismiss Cardholder's claims that were based upon the arbitration award. It contended that there was no need to seek judicial confirmation of that award after the court had granted Bank's motion for summary judgment and that Cardholder had not suffered any damages from the existence of the award because it could be enforced only if it was judicially confirmed.

The district court granted Cardholder's motion for reconsideration to the extent that its grant of Bank's motion for summary judgment was based upon the breach of an account stated. The court held that the letters attached to Cardholder's affidavit created a genuine issue of material fact as to whether he had agreed to an amount owing. The district court denied Cardholder's motion for a continuance, holding that the motion was untimely because it was not made prior to the granting of Bank's motion for summary judgment. It also dismissed Cardholder's claims against Bank, holding that Cardholder had not suffered any injury from the arbitration award where it had not been judicially confirmed. Cardholder also filed a motion to show cause seeking to have Bank held in contempt for allegedly violating a discovery order, but the court refused to do so because the issue was moot. The court entered judgment in favor of Bank against Cardholder in the amount of $19,844.24 for damages, attorney fees, and court costs, and Cardholder timely appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in holding that Bank was the real party in interest?

B. Did the district court err in granting Bank's motion for summary judgment?

C. Did the district court improperly dismiss Cardholder's motion to show cause?

D. Is Bank entitled to an award of attorney fees on appeal?

## III.  ANALYSIS

### A.  Did the District Court Err in Holding that Bank Was the Real Party in Interest?

In his reply to Bank's counterclaims, Cardholder alleged that Bank could not be the real party in interest with respect to the causes of action alleged in its counterclaims.  In opposing Bank's motion for summary judgment, Cardholder argued that the Pooling Agreement and Prospectus showed that Bank had assigned to another entity its credit card account with him.  He contended that these two documents were admissible under the public records exception and the catchall exception to the hearsay rule.  The district court held that Cardholder was not competent to lay the necessary foundation for the admission of the documents under the public records exception and that he had failed to show that they were admissible under the catchall exception.  Because Cardholder had failed to prove any of his defenses, the court granted Bank's motion for summary judgment.

Cardholder filed a motion for reconsideration of the decision granting summary judgment.   He then filed a motion to continue the hearing on the motion for reconsideration to give him time to obtain the affidavits necessary to lay the foundation for the admission of the Prospectus and Pooling Agreement.  About a month later, he filed a document that contained four motions:  (a) a supplemental motion for a continuance; (b) a motion to compel Bank to respond to discovery by producing a certified copy of the Pooling Agreement "with affidavits sufficient to have the document entered into evidence"; (c) a request to have the Pooling Agreement admitted into evidence under Idaho Rule of Evidence 1004(3); and (d) a request to vacate the grant of summary judgment on the ground that pursuant to Idaho Rule of Evidence 1008(c), "the issue of whether the contents of the Pooling and Servicing Agreement previously offered correctly reflects the contents of the original Pooling and Servicing Agreement represents a genuine issue over a material fact which is for the jury to decide."  The district court denied Cardholder's motion for reconsideration on the ground that it was untimely under Rule 56(f) of the Idaho Rules of Civil Procedure, but it did not address Cardholder's other motions.

On appeal, Cardholder contends that the district court erred by failing to admit the Prospectus and Pooling Agreement under Idaho Rules of Evidence 1004(3) and 1008(3) and that

4

the court violated due process by failing to give adequate time for discovery regarding the Pooling Agreement. We need not address those issues because even if the Prospectus and Pooling Agreement had been admitted into evidence, they would not have shown that Bank lacked standing to assert its counterclaims. "[A]lleged errors not affecting substantial rights will be disregarded." *Weinstein v. Prudential Property and Cas. Ins. Co.*, 149 Idaho 299, ___, 233 P.3d 1221, 1232 (2010).

In support of his claim that Bank lacked standing to collect sums owing on Cardholder's credit card account, he cites *McCluskey v. Galland*, 95 Idaho 472, 511 P.2d 289 (1973), wherein this Court held that "an assignee of a valid assignment is the real party in interest to bring an action, and that the assignor is not the real party in interest and has no standing to prosecute an action on the chose in action." *Id.* at 474-75, 511 P.2d at 291-92. To show that Bank assigned its chose in action with respect to Cardholder's credit card account, he relies upon the Pooling Agreement under which all of Bank's "right, title and interest in, to and under the Receivables" were assigned to The Bank of New York, as trustee of the BA Master Credit Card Trust II. The Pooling Agreement defined "Receivable" as "any amount payable on an Account by the related Obligors." It defined "Obligor" to mean, "for any VISA,® MasterCard,® or American Express® credit card account, any Person obligated to make payments on receivables in that account." Thus, as stated in the Prospectus, "MBNA has transferred and assigned all of its right, title and interest in and to the receivables in the credit card accounts and all receivables thereafter created in the accounts."

"An assignment of the chose in action transfers to the assignee and divests the assignor of all control and right to the cause of action, and the assignee becomes the real party in interest." *Purco Fleet Services, Inc. v. Idaho State Dept. of Finance*, 140 Idaho 121, 126, 90 P.3d 346, 351 (2004). "In order to determine the intent of the assignment, the Court looks to the contract between the assignor and assignee." *Id.* In this context, a "chose in action" means "[t]he right to bring an action to recover a debt, money, or thing." Black's Law Dictionary 234 (7th ed. 1999).

Under the Pooling Agreement, "'Account Owner' shall mean FIA [Bank], and its successors and assigns, as the issuer of the credit card relating to an Account pursuant to a Credit Card Agreement." Bank remained the owner of the credit card accounts. It also was required to collect payments due under the Receivables and was authorized and empowered "to commence

enforcement proceedings with respect to such Receivables."  The applicable provision of the Pooling Agreement states:

> The Servicer [Bank] *shall* service and administer the Receivables and shall *collect payments due under the Receivables* in accordance with its customary and usual servicing procedures for servicing credit card receivables comparable to the Receivables and in accordance with the Credit Card Guidelines and shall have full power and authority, acting alone or through any party properly designated by it hereunder, to do any and all things in connection with such servicing and administration which it may deem necessary or desirable.  Without limiting the generality of the foregoing and subject to Sections 4.02 and 10.01, the *Servicer is hereby authorized and empowered* . . . (iv) to execute and deliver, on behalf of the Trust for the benefit of the Certificateholders, any and all instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments, with respect to the Receivables and, after the delinquency of any Receivable and to the extent permitted under and in compliance with applicable law and regulations, *to commence enforcement proceedings with respect to such Receivables* . . . .  (Emphases added.)

Thus, under the Pooling Agreement, Bank is the real party in interest in an action to collect monies owing under a credit card agreement.  If the district court had admitted into evidence the Prospectus and the Pooling Agreement, they would have shown that Bank was the real party in interest with respect to its counterclaims.  Any error the district court may have committed in failing to admit the documents, or in failing to give Cardholder more time in which to provide a proper foundation for admitting them into evidence, was harmless.

**B.  Did the District Court Err in Granting Bank's Motion for Summary Judgment?**

The district court initially granted summary judgment on both Bank's claim for breach of the credit card agreement and its claim for breach of an account stated.  In response to Cardholder's motion for reconsideration, the court vacated the grant of summary judgment with respect to the claim for breach of an account stated.  Cardholder contends that the court also erred in granting summary judgment for breach of the credit card account.  He asserts that the dispute letters attached to his affidavit in support of his motion for reconsideration create a genuine issue of material fact.  He does not point to anything in the letters that allegedly create a disputed issue of fact.  He merely writes, "The same dispute letters disputed the amount FIA claimed in its breach of contract claim just as the account stated claim was disputed."

The first letter was dated December 23, 2004, and it included the following:

6

I am disputing the above amount because I believe that you failed to credit my account for prepayments you agreed to credit on the statement dated December 14, 2004. It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the statement dated December 14, 2004. They do not appear in the statement and I am wondering why. The amount of the credits on the prepayments of money or credit accepted by you should be the approximate amount that I list above [$10,617.94]. I am making this billing inquiry since I am uncertain of all the dates of the prepaid credits, charges and also since there may be additional credits that I am entitled to. Please provide me with a written explanation why these credits are not showing.

The second letter was dated November 3, 2006, and it included the following:

In preparation for this Notice and Demand, I have conducted a full and complete investigation into this matter, and I am of the opinion that MBNA America Bank, N.A. may be in breach of the terms and conditions of the alleged Credit Card Agreement, by its failure to provide either adequate and valuable consideration, or full disclosure of the material terms and conditions of the alleged original agreement, including the nature and extent of any finance charges assessed on the above account. In addition, I have reason to believe that your company has failed to properly credit me for all revenues received by you related to this account. In the event that the application or other evidence of this account was monetized, securitized and/or sold, please provide me with certified copies of all underlying documentation regarding said transactions.

Although both letters were attached to Cardholder's affidavit, he did not state in his affidavit that any of the factual assertions in the letters were true. With respect to the first letter, he merely stated that it was a true and correct copy of a letter he had mailed and that "the letter disputed the amount of the debt shown on the December 14th 2004 statement." With respect to the second letter, he also stated that it was a true and correct copy of the letter he had mailed and that "the letter questions the nature and extent of any finance charges."

In his reply to Bank's counterclaims, Cardholder had admitted that he "entered into an credit card agreement with the Defendant [Bank] whereby the Defendant agreed to extend a revolving line of credit to the Plaintiff for cash advances or the purchase of goods and services." In support of Bank's motion for summary judgment, its agent stated in his affidavit that "each month an account statement was sent to the Plaintiff indicating the account balance due and owing," that "as of July 2005, the account balance owed to Defendant by the Plaintiff was $12,459.74 which reflects the unpaid statements," and that "since December 6, 2004, Plaintiff

7

has made no payment on the account." Cardholder does not point to any sworn statement creating a genuine issue of material fact as to the amount owing on his credit card account. The district court did not err in granting Bank's motion for summary judgment.

## C. Did the District Court Improperly Dismiss Cardholder's Motion to Show Cause?

On April 4, 2008, Cardholder filed a motion to compel discovery. He sought an answer to an interrogatory asking Bank to identify and describe each of its record-keeping systems and to provide information regarding each document in its possession, custody, or control that contains, references, or identifies Cardholder's account. He contended that this information was necessary to permit him to properly identify documents in Bank's possession.

Cardholder also demanded responses to requests for production seeking communications relating to any studies made by Bank regarding bill stuffers, "including the number, or percentage, of customers reading material included in the same envelope as the monthly statement"; all documents regarding such studies; and all documents from any source that regarded bill stuffers and that were used or referenced by Bank. He contended that this information was relevant to his fraud claim because it would show that cardholders do not receive proper notice of contract changes when they are put into the envelope containing the monthly statement.

The district court heard the motion on April 24, 2008, and entered an order five days later granting the motion and requiring Bank to comply within sixty days. However, Bank asked the court to reconsider the order, and on June 26, 2008, it stayed the order pending the outcome of the requested reconsideration. By order entered on July 22, 2008, the district court denied that requested reconsideration and ordered Bank to answer the interrogatory and requests for production.

On September 11, 2008, Cardholder filed a motion to have Bank held in contempt for allegedly failing to comply with the July 22, 2008, order compelling discovery. On October 30, 2008, the court entered an order dismissing Cardholder's complaint, and on the same day it entered an order denying the motion to have Bank held in contempt because the issue was moot based upon the dismissal of the complaint.

On appeal, Cardholder argues that Bank's answers to the discovery ordered were "evasive and incomplete," but the answers are not in the record on appeal. He has not shown

8

that the district court abused its discretion in refusing to hold Bank in contempt for allegedly failing to provide adequate answers to the discovery ordered.

**D. Is Bank Entitled to an Award of Attorney Fees on Appeal?**

Bank has requested an award of attorney fees on appeal. Its entire request and supporting argument is as follows:

> If found to be the prevailing party, Respondent requests an award of attorney's fees on appeal pursuant to I.A.R. 41, I.A.R. 35(b)(5), I.R.C.P. 54(e)(1), I.C. § 12-120(3) and/or I.C. § 12-121. I.C. § 12-120(3) allows for the prevailing party to recover reasonable attorney's fees in any action to recover on a contract. I.C. § 12-120(3) mandates an award of attorney's fees on appeal as well as in the trial court. Respondent's [sic] recovered it [sic] Judgment in the district court on its action for Breach of Contract. Accordingly, Respondent would be entitled to reasonable attorney's fees if found to be the prevailing on appeal.

"We have repeatedly held that we will not consider a request for attorney fees on appeal that is not supported by legal authority or argument." *Bream v. Benscoter*, 139 Idaho 364, 369, 79 P.3d 723, 728 (2003). "Attorney fees are awardable only where they are authorized by statute or contract," *id.*, or by court rule, *Gibson v. Ada County Sheriff's Office*, 147 Idaho 491, 496-97, 211 P.3d 100, 105-06 (2009) (granting request for attorney fees pursuant to Idaho Appellate Rule 11.1 (now 11.2)). We will separately address each of the grounds for Bank's requested attorney fee award.

First, Bank cites Idaho Appellate Rule 41. That rule "sets forth the procedure for awarding attorney fees in appeals before this Court, but does not provide authority to award attorney fees." *Swanson v. Kraft, Inc.*, 116 Idaho 315, 322, 775 P.2d 629, 636 (1989).

It next cites Idaho Appellate Rule 35(b)(5). "Rule 35 does not provide authority for the award of attorney fees." *Trilogy Network Systems, Inc. v. Johnson*, 144 Idaho 844, 848, 172 P.3d 1119, 1123 (2007).

Bank also cites Rule 54(e)(1) of the Idaho Rules of Civil Procedure. That rule does not provide any authority for awarding attorney fees. It states that the court in any civil action may award the prevailing party reasonable attorney fees "when provided for by any statute or contract." Furthermore, it only governs the procedure in the district courts and magistrate's divisions of the district courts, Idaho R. Civ. P. 1(a), not the procedure on appeal to this Court.

9

In its request for attorney fees, Bank writes, "I.C. § 12-120(3) allows for the prevailing party to recover reasonable attorney's fees in any action to recover on a contract." Bank misstates that statute. "If the party is claiming that a statute provides authority for an award of attorney fees, the party must cite to the statute and, if applicable, the specific subsection of the statute upon which the party relies." *Bream*, 139 Idaho at 369, 79 P.3d at 728. The applicable portion of the statute provides, "In any civil action to recover on . . . [a] contract relating to the purchase or sale of goods, wares, merchandise, or services . . ., the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." Bank has not provided any argument that this action fits within the provisions of the statute, and merely misstating the statute's wording is not sufficient to support an award of attorney fees on appeal.

Finally, Bank cites Idaho Code § 12-121. In *Carroll v. MBNA America Bank*, 148 Idaho 261, ___, 220 P.3d 1080, 1089 (2009) (citation omitted), we held:

> A citation to statutes and rules authorizing fees, without more, is insufficient. Although MBNA cited to the above statutory fees provisions, it submitted no argument in its brief as to why fees should be awarded under either I.C. § 12-120(3) or I.C. § 12-121. Thus, we decline to award attorneys fees to MBNA on appeal.

Bank's mere citation of Idaho Code § 12-121 is insufficient. Therefore, we decline to award Bank attorney fees on appeal.

## IV. CONCLUSION

We affirm the judgment of the district court. We award Bank costs, but not attorney fees, on appeal.

Justices J. JONES, W. JONES, HORTON and J. Pro Tem KIDWELL **CONCUR.**

10