# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51532

ERIC YORK, )
     )
     Plaintiff-Appellant, )      Boise, August 2025 Term
     )
v. )      Opinion filed: January 20, 2026
     )
KEMPER NORTHWEST, INC., an Idaho )      Melanie Gagnepain, Clerk
corporation; MATTHEW MEDEIROS, an )
individual, )
     )
     Defendants-Respondents, )
     )
and )
     )
ERIC CLAASSEN, an individual; and CHAD )
BELVOIR, an individual, )
     )
     Defendants. )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Peter G. Barton, District Judge.

The amended judgment of the district court is <u>affirmed in part</u> and <u>vacated in part</u>. Case is <u>remanded </u>for entry of amended judgment.

Givens Pursley LLP, Boise, for Appellant. Donald Z. Gray argued.

Exceed Legal, Boise, for Respondent Kemper Northwest, Inc. Erik J. Bolinder argued.

Duke Evett, PLLC, Boise, for Respondent Matthew Medeiros. Keely E. Duke argued.

---

MOELLER, Justice.

This appeal concerns a dispute over an alleged employment contract. Eric York claims he had a contract with Kemper Northwest, Inc., and one of its owners, Matthew Medeiros, to receive stock in Kemper Northwest in exchange for his commitment to remain an employee through a certain date. York remained in Kemper Northwest's employ through that date; however, when no

1

stock was forthcoming, he sued. York asserted four causes of action based on this purported stock agreement: promissory estoppel, fraud, and two breach of contract claims. Following a bench trial, the district court ruled in favor of Medeiros and Kemper Northwest on all claims. Additionally, the district court awarded attorney fees to Medeiros and Kemper Northwest. York appealed to this Court. For the reasons explained below, we affirm the district court's amended judgment in part and vacate it in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Medeiros began working for Kemper Refrigeration, Inc., an industrial refrigeration contractor, in 1989. Kemper Refrigeration was originally based in California, but it expanded to Idaho in 1992, with Medeiros heading up the expansion. In 1995, the owner of Kemper Refrigeration passed away, resulting in Medeiros and Kenton Lorenz each becoming 50% owners of the company. Lorenz operated the California office, while Medeiros managed the Idaho office.

In 2014, Medeiros broke away from Lorenz and founded Kemper Northwest, where he served as the president and sole owner. Shortly thereafter, Medeiros offered to sell 50% of his shares in Kemper Northwest to Eric Claassen and Chad Belvoir, both of whom had been longtime employees of Kemper Refrigeration. Pursuant to a stock purchase agreement, Medeiros sold 50% of his stock in Kemper Northwest to Claassen and Belvoir, each of whom paid $160,000 for their shares. Claassen and Belvoir were allowed to pay the purchase price for the stock out of later proceeds owed to them. Following the sale, the resulting ownership structure of Kemper Northwest left Medeiros with 50% of the company, while Claassen and Belvoir each owned 25%.

York was originally hired by Kemper Refrigeration as a service technician in 2003. After about three years, York left Kemper Refrigeration due to the company having "credit issues that made it difficult for [him] to order parts and perform his job." However, York rejoined Kemper Refrigeration a year later, where he continued to work as a service technician for several years. York continued his employment with Kemper Northwest after the 2014 split with Lorenz. He was subsequently promoted twice: first to service manager, then to sales engineer.

Around 2015, York went on a business trip with Claassen. While on that trip, Claassen showed York a portion of Kemper Northwest's shareholder agreement, which contained a succession plan that stated York would have the right to purchase shares in Kemper Northwest should Medeiros leave the company. The key provision of the agreement provided:

2

**5. Purchase Price Upon Other Withdrawal.**

      **a. Withdrawal of MATTHEW JOHN MEDEIROS.** In the event MATTHEW JOHN MEDEIROS desires to withdraw from the Company or ceases employment for any reason, ERIC RAYMOND CLAASSEN and CHAD ROBERT BELVOIR shall have the right to purchase ten (10) Shares each from the Shares owned by MATTHEW JOHN MEDEIROS for the Purchase Price established pursuant to Section 6, and AARON CLAASSEN and ERIC YORK shall have the right to purchase fifteen (15) Shares each from the Shares owned by MATTHEW JOHN MEDEIROS for the Purchase Price established pursuant to Section 6.

While York saw this provision, Claassen allegedly did not show York the portion of the shareholder agreement that directly followed, which explained the method for tendering the price of the shares: "The Purchase Price for the Shares purchased pursuant to this paragraph a of Section 5 may be paid in cash or through execution of the Promissory Note."

Despite Section 5(a) of the agreement expressly stating that he would have a right to "purchase" 15 shares, York testified at trial that he understood Claassen and Belvoir planned to *give* him the shares in Kemper Northwest free of any cost:

      [PLAINTIFF'S COUNSEL:] . . . [T]his sentence does say that you shall have the right to purchase 15 shares, and it does say for the purchase price established pursuant to another section that you presumably didn't see.

      Despite that language, you still understood that the company would be buying those shares on your behalf? Is that your testimony?"

      [YORK:] Yes.

In 2017, Kim Sprinkle, who was Kemper Northwest's controller, also became responsible for Kemper Refrigeration's books and finances. Sprinkle helped Kemper Refrigeration resolve its financial issues. As a token of appreciation for her work, Medeiros offered Sprinkle a 10% interest in Kemper Refrigeration. In early 2018, York discovered that Sprinkle had been offered 10% interest in Kemper Refrigeration. This information upset York because he believed that he was the next person in line to receive an ownership interest in Kemper Northwest.[1] As a result, York became uncertain about his future with Kemper Northwest and began looking for a new job.

Soon after, York informed Claassen that he was considering a move to Alaska to accept a job at Pacific Seafoods. This prompted Claassen to speak with Medeiros and request that he put in writing his future plan to offer York shares in Kemper Northwest. Around that same time, York also spoke with Medeiros in his office, conveying that he was upset and questioning his future

---

[1] Notably, Sprinkle was offered interest in *Kemper Refrigeration*, not Kemper Northwest.

with Kemper Northwest. To placate York's concerns, on April 3, 2018, Medeiros gave York a letter ("2018 Letter") that stated:

> Mr. York,
>
> I Matt Medeiros 50% owner of Kemper Northwest Inc. shall offer 25% of my stock (12.5%) to you on January l, 2024. You must be employed with Kemper Northwest Inc. at that time to receive this.
>
> If I should die prior to that date this agreement would have to come thru [sic] my remaining business partners as this is not part of the company set up buy-sell agreement.
>
> Sincerest regards,
> [Medeiros' handwritten signature]
> Matt Medeiros
> President Kemper Northwest Inc.

When he gave the letter to York, Medeiros told York that he should have the other two owners of Kemper Northwest, Claassen and Belvoir, also sign the letter. Medeiros testified that he wrote the letter so that (1) York would have written proof of Medeiros' future plan, and (2) York would stay employed with Kemper Northwest. York testified that he did not read the letter at the time or indicate to Medeiros that he "accepted" the offer. Further, York testified that he did not show the letter to Claassen or Belvoir, nor did he ask either of them to sign it, as Medeiros instructed. However, York continued to work for Kemper Northwest.

In the fall of 2020, Medeiros' wife was diagnosed with cancer. In order to spend more time with her, Medeiros informed Claassen and Belvoir that he would be retiring soon. In a phone call, Medeiros told Claassen and Belvoir that he wanted them to honor the terms of the 2018 Letter regarding York. Medeiros retired at the end of 2020. He agreed to sell all of his shares to Kemper Northwest for $3,337,250.80, which would be paid in annual installments over the course of 10 years. After accepting the offer, Claasen and Belvoir each owned 50% of the company stock.

On January 18, 2021, York emailed Claassen and Belvoir to ask whether they would honor the terms of the 2018 Letter. Later, during a lunch meeting, Claassen and Belvoir informed York that they would not honor the letter. York then sent a letter to Claassen and Belvoir through his attorney, once again inquiring whether they would honor the terms of the 2018 Letter. Kemper Northwest responded through its attorney, stating: "At no time did Kemper offer or promise to offer shares of stock in Kemper to Mr. York and no such offer or promise was ever a part of Mr. York's compensation package."

4

In April 2021, York filed suit against Kemper Northwest, Medeiros, Claassen, and Belvoir.[2] York's complaint alleged claims for promissory estoppel and fraud against all defendants, and alleged breach of contract against Medeiros and Kemper Northwest. Kemper Northwest, Claassen, and Belvoir filed an answer in July 2021; Medeiros filed his answer a month later. In February 2022, Medeiros filed a motion for summary judgment; the remaining defendants did the same. The district court subsequently granted Claassen and Belvoir's motion for summary judgment and dismissed them from the lawsuit. However, the district court denied Kemper Northwest's and Medeiros' motions for summary judgment.

The district court conducted a four-day bench trial in July 2023 to address the remaining claims against Kemper Northwest and Medeiros. On November 22, 2023, the district court issued its Findings of Fact and Conclusions of Law, finding in favor of the defendants on each cause of action. The district court later entered a judgment dismissing the claims against Medeiros and Kemper Northwest on December 21, 2023.

On January 4, 2024, Medeiros filed a timely motion for attorney fees and costs, along with a memorandum in support of the motion and a declaration of counsel. Kemper Northwest did the same the next day. York then filed motions to disallow the defendants' attorney fees and costs, along with supporting memoranda. York noted deficiencies in both Medeiros' and Kemper Northwest's memoranda. On February 8, 2024, Kemper Northwest filed a supplemental memorandum of attorney fees and costs. On February 20, 2024, Medeiros filed a memorandum in opposition to York's motion to disallow, along with a declaration of counsel, which included new information to support Medeiros' request for attorney fees and costs. That same day, Kemper Northwest also filed a memorandum in opposition to York's motion to disallow. On February 23, 2024, York filed two reply briefs in support of his motions to disallow.

After reviewing their supplemental filings, the district court granted attorney fees and costs to Medeiros and Kemper Northwest. The district court entered an amended judgment on May 20, 2024. York appealed.

## II.   STANDARDS OF REVIEW

"Review of a trial court's conclusions following a bench trial is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009) (citation

---

[2] York later left Kemper Northwest in 2022 to start his own refrigeration business.

omitted). "This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous." *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017) (citation omitted). "Clear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence." *Id.* (quoting *Pandrea v. Barrett*, 160 Idaho 165, 171, 369 P.3d 943, 949 (2016), *abrogated on other grounds by Nordgaarden v. Kiebert*, 171 Idaho 883, 527 P.3d 486 (2023)). If the record demonstrates evidence "that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal, there is substantial and competent evidence." *Id.* (citing *Greenfield v. Wurmlinger*, 158 Idaho 591, 598, 349 P.3d 1182, 1189 (2015)). Importantly, this Court "will not substitute [its] view of the facts for the view of the district court." *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). "Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered." *Borah*, 147 Idaho at 77, 205 P.3d at 1213 (citing *Rowley v. Fuhrman*, 133 Idaho 105, 107, 982 P.2d 940, 942 (1999)).

Notwithstanding the deference afforded the trial court's findings of fact, this Court "exercises free review over matters of law and is not 'bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented.' " *Mortensen*, 163 Idaho at 50, 408 P.3d at 48 (quoting *Morgan v. New Sweden Irrigation Dist.*, 160 Idaho 47, 51, 369 P.3d at 990, 994 (2016)). Thus, "[w]e review a district court's conclusions of law de novo." *Rowley v. Ada Cnty. Highway Dist.*, 156 Idaho 275, 277, 322 P.3d 1008, 1010 (2014) (citing *Ponderosa Home Site Lot Owners v. Garfield Bay Resort, Inc.*, 139 Idaho 699, 700–01, 85 P.3d 675, 676–77 (2004)).

"The district court's decision to award attorney fees is reviewed under the abuse of discretion standard." *Med. Recovery Servs., LLC v. Lopez*, 163 Idaho 281, 282, 411 P.3d 1182, 1183 (2018) (citation omitted). Under the abuse of discretion standard, this Court reviews whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

6

## III.  ANALYSIS

York's appeal challenges the district court's dismissal of his breach of contract and fraud claims and disputes the court's award of attorney fees to Medeiros and Kemper Northwest. We will address each issue in turn.

### A.  The district court did not err in dismissing York's breach of contract claim.

York argues that the district court erred when, following trial, it dismissed his breach of contract claim against Medeiros and Kemper Northwest. He maintains that the 2018 Letter is a "valid, binding contract," that "represent[s] all of the requisite elements to form a binding contract." To establish a breach of contract, one must prove the following elements: "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co.*, 154 Idaho 269, 278, 297 P.3d 232, 241 (2013) (citations omitted).

The district court determined that York's breach of contract claim failed against both Medeiros and Kemper Northwest because he could not establish the first and most basic requirement in a breach of contract claim: the existence of a contract. The district court found that the evidence adduced at trial did not establish by a preponderance that there was a meeting of the minds "as to the essential term of [the] price [of the stock]." Not only did the 2018 Letter fail to set a price for the stock, it also failed to specify whether the stock would be offered "(i) for no money from Mr. York, (ii) at a price to be set by Mr. Medeiros, (iii) at a price to be set by Mr. York, (iv) at a price to be negotiated, or (v) at fair market price to be determined by some third party or external source." Likewise, the 2018 Letter did not state "when any monies would be owed, whether (i) at the time of the transfer or (ii) over time out of future proceeds like what happened with . . . Claassen and Belvoir." For this reason, the court found there was "no meeting of the minds as to the essential term of price." The district court also determined that, based on the language of the 2018 Letter, Medeiros made an "offer" of stock to York. According to the district court, this meant that Medeiros was only "manifesting his willingness to enter into a bargain with Mr. York," not that an agreement had been consummated. Finally, the court found the breach of contract claim "fails as to Kemper Northwest for the additional reason that Kemper Northwest made no promise to Mr. York." It concluded that any "offer" made to York was made by Medeiros, not Kemper Northwest.

7

"In order for a contract to be formed there must be a meeting of the minds." *Barry v. Pac. W. Constr., Inc.*, 140 Idaho 827, 831, 103 P.3d 440, 444 (2004) (citing *Inland Title Co. v. Comstock*, 116 Idaho 701, 703, 779 P.2d 15, 17 (1989)). Where the agreement is too vague, indefinite, or uncertain as to its essential terms, there is no "meeting of the minds." *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 737, 152 P.3d 604, 608 (2007) (remaining citations omitted). "No enforceable contract comes into being when parties leave a material term for future negotiations, creating a mere agreement to agree." *Brunobuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 217–18, 457 P.3d 860, 869–70 (2020) (citation omitted). "[A] contract must provide a price or a means of determining the price." *Bauchman-Kingston P'ship, LP v. Haroldsen*, 149 Idaho 87, 93, 233 P.3d 18, 24 (2008). Even when parties enter a written agreement to make a payment with defined terms, the "agreement" may be deemed an agreement to agree if that payment is subject to contingencies on which the parties lack consensus. *See Treasure Valley Home Sols., LLC v. Chason*, 171 Idaho 655, 659, 524 P.3d 1272, 1276 (2023) (holding that an agreement to pay a defined sum on a certain date was an agreement to agree because it was contingent on terms for a seller-financed loan, meaning there was no consensus on the purchase price).

After reviewing the record, we conclude that the district court's findings of fact are supported by substantial and competent evidence, and its conclusions were correct as a matter of law. The 2018 Letter failed to establish: a price for the stock, how the price would be established, when that price would be due, or how it would be paid. York does not point to evidence in the record that puts the district court's findings in doubt, nor does he demonstrate any legal error in the court's reasoning. York fails to address, let alone convincingly dispute, this lack of evidence. Thus, York cannot demonstrate that the district court's conclusion was clearly erroneous. As a result, York has failed to establish that the district court committed clear error when it found that an essential element of a contract, the price, was absent from the 2018 Letter.

We also conclude the district court's finding that the 2018 Letter was, at most, an offer by Medeiros, supported by substantial evidence. On appeal, York does not point to any facts in the record to dispute the district court's findings or explain how they are clearly erroneous. Instead, York simply recites the elements necessary to form an enforceable contract and makes the conclusory statement that the 2018 Letter met those elements. In York's view, Medeiros' promise to give the stock to him in exchange for his continued employment with Kemper Northwest was all that was necessary to form a binding contract. However, the district court found that Medieros

8

only expressed his willingness to *offer* his stock to York, not *give* it to him. We agree. Therefore, we affirm the district court's dismissal of the breach of contract claim against Medeiros.

Finally, regardless of the alleged contract's validity as to Medeiros, it would not be enforceable against Kemper Northwest. The district court concluded that any offer of stock came from Medeiros, not Kemper Northwest. This is supported by the plain language of the 2018 Letter: "I Matt Medeiros . . . shall offer . . . *my* stock[.]" (Emphasis added). York claims the 2018 Letter is enforceable against Kemper Northwest because it was signed by Medeiros as "President Kemper Northwest Inc." However, this moniker is not enough to overcome the district court's finding that "Kemper Northwest made no promise to Mr. York." Medeiros did not own a majority interest in Kemper Northwest nor did the other shareholders agree to sell the shares to York. Thus, Kemper Northwest never manifested *its* intent to contract with York. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Hafer*, 158 Idaho 694, 701–02, 351 P.3d 622, 629–30 (2015). At oral argument, York's attorney acknowledged that because "[the judge] made a ruling that Madeiros signed this in his individual capacity . . . , given the standard of review on a finding of fact, it's an uphill battle, so we're not really taking issue with that finding." York does not dispute the district court's finding that Kemper Northwest was not an offeror bound to the 2018 Letter. Accordingly, we affirm the district court's ruling that the 2018 Letter is not enforceable against Kemper Northwest.

During oral argument, York asserted for the first time that the 2018 Letter was a complete contract by comparing it to a right of first refusal. According to York's counsel, it "wasn't an offer on specific terms" because it was an offer to "be at the table" in the future. He asked the Court to look at the "operation" of the 2018 Letter, instead of the language of the letter. York failed to preserve this argument for appeal because he did not raise it at the district court. *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d 849, 853–54 (2022). However, even if it were preserved, it is unavailing because York has consistently maintained that he was to receive the stock for free, which is inconsistent with his new theory that it was a right of first refusal.

"A right of first refusal is 'a potential buyer's contractual right to meet the terms of a *third party's offer* if the seller intends to accept that offer.' " *Nicholson v. Coeur d'Alene Placer Mining Co.*, 161 Idaho 877, 881, 392 P.3d 1218, 1222 (2017) (quoting Black's Law Dictionary 1325 (7th ed. 1999)) (citation modified) (emphasis added). It is "conditioned upon the willingness of the owner to sell" and "limits the right of the owner to dispose freely of its property by compelling the owner to offer it first to the party who has the first right to buy." 25 *Williston on Contracts* § 67:89

(4th ed. May 2025 update). "[I]n order to accept that offer, the [holder] must fully meet the terms and conditions of the offer in his acceptance." *Gyurkey v. Babler*, 103 Idaho 663, 666, 651 P.2d 928, 931 (1982). We have previously explained that "[a] mere promise to sell land in the future to a specific buyer falls far short of creating a valid and enforceable right of first refusal." *Tricore Invs., LLC v. Est. of Warren*, 168 Idaho 596, 624, 485 P.3d 92, 120 (2021). Likewise, preliminary overtures to gauge interest in a future sale, without explicit mention of a right of first refusal, do not support the existence of a contract right of first refusal. *See id.* at 623, 485 P.3d at 119.

Here, there were no terms for York to accept or reject because there was not a third party with whom to compete. If the 2018 Letter was a valid contract, as York maintains, then Mederios was required to make York an offer without contemplation (or the limiting factor) of a competing party. *See* 25 *Williston on Contracts* § 67:89 (4th ed. May 2025 update) (explaining that a seller violates a holder's right of first refusal by failing to offer the holder on the same terms *offered in good faith by a buyer*). Thus, York's argument fails because the 2018 Letter did not explicitly communicate the existence of a right of first refusal and a right of first refusal cannot apply without a third party offer for the holder of the contract right to accept or reject.

## B. The district court did not err in dismissing York's fraud claim.

Following the bench trial, the district court denied York's fraud claims against both Medeiros and Kemper Northwest. The court concluded that York failed to show at trial, by clear and convincing evidence, that Medeiros knew the letter was false, or that Medeiros never intended to follow through on the "offer." On appeal, York maintains the court erred, asserting that, at the time Medeiros drafted the 2018 Letter, he knew that he needed the prior consent of his business partners to make the offer contained in the letter. Thus, York contends that it was fraudulent for Medeiros to state "I . . . shall offer" the stock to York, as he could not guarantee that his other business partners would ever make or approve such an offer.

To prevail on a fraud claim, a plaintiff must establish each of the nine elements of fraud with particularity: "(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury." *Bank of Com. v. Jefferson Enters., LLC*, 154 Idaho 824, 833, 303 P.3d 183, 192 (2013) (citation omitted). Importantly, "[f]raud is never presumed." *Barron v. Koenig*, 80 Idaho 28, 39, 324 P.2d 388, 394 (1958). Instead, the plaintiff has the burden of "proving the elements of

10

fraud by clear and convincing evidence, as opposed to a less stringent preponderance standard used in ordinary negligence cases." *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 216, 923 P.2d 456, 461 (1996) (citation omitted).

"In general, the representation forming the basis of a claim for fraud must concern *past or existing material facts.*" *Apr. Beguesse, Inc. v. Rammell*, 156 Idaho 500, 509, 328 P.3d 480, 489 (2014) (emphasis added) (internal quotation marks and citation omitted). However, there exists an exception "where a false prediction or opinion is given with the intent to mislead." *Id.* (quoting *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 601, 150 P.3d 288, 294 (2006)). There is also an exception when " 'the promise was accompanied by statements of existing fact which show the promisor's ability to perform the promise and those statements were false.' " *Id.* (quoting *Gillespie v. Mountain Park Est., L.L.C.*, 142 Idaho 671, 674, 132 P.3d 428, 431 (2006)).

In dismissing York's fraud claim, the district court concluded:

32. To satisfy the fourth element [of fraud], Mr. York must show by clear and convincing evidence that in April 2018 Mr. Medeiros knew his letter was false and that he never intended to follow through on the "offer" as written.

33. The evidence submitted at trial does not show this by clear and convincing evidence.

York asserts that the district court's findings are not supported by substantial and competent evidence. Instead, York claims that "the record supports a conclusion that when Medeiros authored the April 2018 Letter, he believed that his remaining business partners needed to approve it." Further, York contends that "[t]his is wholly inconsistent with the plain language of the April 2018 Letter, which suggests that York would only need to go through the other business partners if Medeiros died prior to the time of the offer."

First, as argued by Medeiros and Kemper Northwest, York's fraud claim relates to a future event. York admitted at trial that he understood the 2018 Letter referred to a future event and a future plan. This runs against the principle that "the representation forming the basis of a claim for fraud must concern past or existing material facts." *Apr. Beguesse, Inc.*, 156 Idaho at 509, 328 P.3d at 489 (citation omitted). " '[A] representation consisting of [a] promise or a statement as to a future event will not serve as [a] basis for fraud, even though it was made under circumstances as to knowledge and belief which would give rise to an action for fraud had it related to an existing or past fact.' " *Id.* at 510, 328 P.3d at 490 (quoting *Sharp v. Idaho Inv. Corp.*, 95 Idaho 113, 122, 504 P.2d 386, 395 (1972)). Further, York has failed to demonstrate that Medeiros' actions fall

11

within the exceptions to that rule, i.e., that there was (1) a false prediction or opinion with the intent to mislead or (2) a promise accompanied by statements of existing fact showing the promisor's ability to perform the promise and those statements were false. *See id.* We conclude that the district court properly dismissed the fraud claims because, without more, Medeiros' future intent to offer York stock is not a sufficient legal basis for fraud as a matter of law.

Having reviewed the record, we also conclude that York has failed to demonstrate the district court erred in finding that he failed to prove the fourth element of fraud (the speaker's knowledge of its falsity) by clear and convincing evidence. The substantial and competent evidence admitted at trial demonstrates the shareholder agreement authorized Medeiros to sell shares to York in the event he retired or withdrew from Kemper Northwest. Medeiros intended on following through with this offer, but both Medeiros and York understood it was simply *a future plan*, contingent on the actions and choices of the other business partners. In other words, both Medeiros and York understood that the nature of the "offer" contained in the 2018 Letter was based on contingencies that had yet to occur.

The district court concluded that there was not clear and convincing evidence that the representations in the 2018 Letter were false in the first instance, that Medeiros knew they were false, or that he never intended to follow through on his offer. On appeal, York points to no evidence indicating Medeiros knew the 2018 Letter was false or that he intended to mislead York. This Court will not find clear error on appeal, even in the face of conflicting evidence, so long as the evidence the trial court relied upon was of the type "a reasonable trier of fact could accept and rely upon in making the factual finding[s] . . . ." *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017). Therefore, we conclude that the district court's findings were supported by substantial and competent evidence and it did not err in determining York failed as a matter of law to meet the heightened burden of proving his fraud claim.

**C. The district court erred in awarding attorney fees to Kemper Northwest, but did not err in awarding Medeiros attorney fees.**

After the district court issued the judgment dismissing the claims against Kemper Northwest and Medeiros, they both requested attorney fees. On January 4, 2024, Medeiros filed a motion for attorney fees and costs, along with a memorandum in support of the motion and a declaration of counsel. Kemper Northwest did the same the next day. On January 18, 2024, York filed motions to disallow the defendants' attorney fees and costs, along with supporting

memoranda, arguing that (1) Kemper Northwest's request for attorney fees was deficient because it failed to analyze Idaho Code section 12-120(3), and (2) Medeiros' request was deficient because it was duplicative, improperly apportioned, and failed to include necessary timekeeper information regarding the staff that worked on the case.

In response, Kemper Northwest filed a supplemental memorandum of attorney fees and costs on February 8, 2024, which included an analysis of Idaho Code section 12-120(3) that supported its request as the prevailing party in a commercial-transaction dispute. On February 20, 2024, Medeiros filed a memorandum in opposition to York's motion to disallow, along with a declaration of counsel, which included new information to support Medeiros' request for attorney fees and costs. That same day, Kemper Northwest also filed a memorandum in opposition to York's motion to disallow, arguing that it notified York of its intent to seek attorney fees and sufficiently analyzed Idaho Code section 12-120(3). On February 23, 2024, York filed two reply briefs in support of his motions to disallow, again contending that the district court should find that Kemper Northwest and Medeiros waived the right to attorney fees, and that the district court should reject the parties' supplemental memoranda for untimeliness. The district court permitted the supplementation from both Medeiros and Kemper Northwest, denied York's motion to disallow, and granted attorney fees and costs as follows: $5,072.09 in costs, $2,569.56 in discretionary costs, and $116,461.84 in attorney fees to Kemper Northwest; and $1,626.02 in costs, $3,267.25 in discretionary costs, and $113,247.55 in attorney fees to Mederios.

On appeal, York maintains that Kemper Northwest's initial memorandum of attorney fees was deficient, and that the district court erred in considering Kemper Northwest's supplemental memorandum in support of its motion for attorney fees. Likewise, York asserts that Medeiros failed to provide sufficient information in his initial affidavit in support of his motion for attorney fees, and that the district court erred in considering his supplemental memorandum.

*1. The district court erred by granting attorney fees to Kemper Northwest.*

York claims that Kemper Northwest failed to cite and properly analyze Idaho Code section 12-120(3), the statute that formed the legal basis for the fees it requested in its memorandum; therefore, it waived its right to attorney fees. Critically, Kemper Northwest's initial memorandum lacked any reference to section 12-120(3), the statute permitting reasonable attorney fees in civil actions regarding a commercial transaction. Kemper Northwest only referenced Idaho Code section 12-121 in the "Legal Standard" section of its memorandum. Idaho Code section 12-121

allows attorney fees "when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. Here, the district court made no finding under section 12-121; instead, it expressly awarded fees pursuant to 12-120(3). However, Kemper Northwest did not seek attorney fees on that basis in its initial request. York argues that this deficiency—granting attorney fees on a statutory basis not cited by Kemper Northwest in its request—is fatal to Kemper Northwest's claim for fees; thus, the district court erred in awarding attorney fees under Idaho Code section 12-120(3). We agree with York.

Idaho Rule of Civil Procedure 54(d) specifies the procedure a party must follow when requesting costs, including the time and content requirements of the memorandum of costs:

> *Memorandum of Costs.* At any time after the verdict of a jury or a decision of the court, but not later than 14 days after entry of judgment, any party who claims costs may file and serve on adverse parties a memorandum of costs, itemizing each claimed expense. *The memorandum must state* that to the best of the party's knowledge and belief the items are correct and *that the costs claimed are in compliance with this rule*. Failure to timely file a memorandum of costs is a waiver of the right to costs. A memorandum of costs prematurely filed is considered as timely.

I.R.C.P. 54(d)(4) (emphasis added). "[A]ttorney fees, when allowable by statute or contract, are costs in an action and *processed in the same manner as other costs and included in the memorandum of costs.*" I.R.C.P. 54(e)(5) (emphasis added). Importantly, Rule 54(e)(5) also requires that a claim for attorney fees "must be supported by an affidavit of the attorney *stating the basis* and method of computation." *Id.* (emphasis added).

This Court has consistently held that requests for attorney fees must include a reference to the code section or contract provision that forms the basis of the request. *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 721, 117 P.3d 130, 135 (2005) ("And, of course, a party must specify, in its [Rule] 54(e)(5) fee request, the code section or contract provision pursuant to which it makes the fee request."); *Stevens v. Stevens*, 135 Idaho 224, 230, 16 P.3d 900, 906 (2000) ("A party claiming attorney fees must assert the specific statute, rule, or case authority for its claim."); *see Thompson v. Motel 6*, 135 Idaho 373, 378, 17 P.3d 874, 879 (2001) ("[T]he [prevailing party] [did] not cite to any case law or statute for an award of fees. Therefore, this Court will not award attorney fees on appeal because the [prevailing party] failed to properly support its claim."). Further, it is insufficient for a party to merely cite to a statute or contract provision that entitles them to attorney fees; an adequate legal analysis must accompany any cited authority. *See Jones v. Lynn*, 169 Idaho 545, 565, 498 P.3d 1174, 1194 (2021) ("[A]bsent any legal

analysis or argument, 'the mere reference to [a] request for attorney fees is not adequate.' " (first alteration in original) (citation omitted)); *Capps v. FIA Card Servs., N.A.*, 149 Idaho 737, 745, 240 P.3d 583, 591 (2010) ("A citation to statutes and rules authorizing fees, without more, is insufficient." (quoting *Carroll v. MBNA Am. Bank*, 148 Idaho 261, 270, 220 P.3d 1080, 1089 (2009))).

The district court explained its rationale for granting Kemper Northwest's request for attorney fees:

> Kemper's *complaint* stated that Kemper was seeking attorney fees under [s]ection 12-120(3). The Kemper Memorandum of Costs identified that Kemper was seeking attorney fees, that it was the prevailing party, and the amount of the attorney fees sought. The Kemper Supplemental Memorandum of Costs states those two ideas in the same document: that Kemper is seeking attorney fees under [s]ection 12-120(3). The timing of Kemper presenting the information is not a defect. And to the extent it were a defect, this [c]ourt exercises its discretion to allow the late filing.

(Emphasis added) (internal citation omitted). Although the court pointed to the complaint as providing the sole reference to section 12-120(3) prior to the filing of the supplemental memorandum, neither Rule 54 nor our caselaw support the view that a mere reference to attorney fees in a complaint will suffice. *See Eighteen Mile Ranch, LLC*, 141 Idaho at 721, 117 P.3d at 135) ("And, of course, a party must specify, *in its* [*Rule*] *54(e)(5) fee request*, the code section or contract provision pursuant to which it makes the fee request." (emphasis added)). Thus, Kemper Northwest's reference to Idaho Code section 12-120(3) in its complaint did not cure its failure to cite the statute in its initial request for attorney fees.

In sum, our precedents establish that, when requesting fees, a prevailing party must (1) timely cite to a code section or contract provision that forms the basis of the request for attorney fees *and* (2) analyze why the authority justifies the request. Otherwise, the request is waived. Kemper Northwest failed to meet either requirement because Idaho Code section 12-120(3) was not mentioned in its initial request for attorney fees and there was no analysis of why Rule 54, section 12-121, or any other statute supported its request. Accordingly, because Kemper Northwest's initial request was fatally deficient, and could not be supplemented, we vacate the district court's award of fees.

Although York has also challenged the costs awarded to Kemper Northwest, he has failed to articulate any basis for concluding that the district court's award of costs was an abuse of

discretion. Put simply, the same procedural misstep that was fatal to Kemper Northwest's request for attorney fees did not taint the court's award of costs under Rule 54(d).

> 2. *The district court did not err by considering Medeiros' supplemental memorandum when granting him costs and attorney fees.*

Next, York asserts the district court failed to properly consider the criteria set forth in Rule 54(e)(3) when it awarded attorney fees to Medeiros. This rule requires courts to consider 12 factors when determining the amount of attorney fees. I.R.C.P. 54(e)(3). York takes issue with the fact that Medeiros' request only named one of the eight timekeepers that worked on the case. According to York, the district court did not have enough information to consider the third factor: "the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law . . . . " I.R.C.P. 54(e)(3)(C). However, our case law does not require Medeiros to "provide *all* the information necessary for the district court to consider the factors[.]" *Bronco Elite Arts & Athletics, LLC v. 106 Garden City, LLC*, 172 Idaho 506, 527, 534 P.3d 558, 579 (2023) (citation omitted). Instead, we have held that "[s]ome information may come from the court's own knowledge and experience [and] some may come from the record of the case[.]" *Id.* at 526, 534 P.3d at 579 (citation omitted) (alterations in original).

Medeiros' initial memorandum and supporting affidavit set forth that: (1) he was a prevailing party; (2) his claim for attorney fees falls under Idaho Code section 12-120(3) because of the commercial nature of the dispute; (3) the total amount requested has been carefully apportioned; and (4) each of the 12 factors for consideration under Rule 54(e)(3) support his claim. Pertaining to the third factor of Rule 54(e)(3), Medeiros provided the name, work experience, and *curriculum vitae* of Keely Duke, the lead attorney on the case. However, Medeiros' initial memorandum did not provide details about the other attorneys who worked on the case, nor did it specify the apportionment of fees and the difference in hourly rates among the partners, associate attorneys, and paralegals who worked on the case.

Even if the district court lacked sufficient factual information to evaluate the Rule 54 factors, Medeiros' supplemental documents provided the requisite information. The supplemental memorandum and affidavit provided the names, work experience, and contributions of the other seven timekeepers on the case. While Rule 54(d)(4) provides a 14-day timeline for filing a memorandum of costs when a request for attorney fees is made, there are no rules preventing counsel from submitting additional facts via a supplemental memorandum. However, the supplemental memoranda should be filed within a reasonable time after the original deadline has

16

passed. *Chambers v. Board of Pharmacy & Agency*, 170 Idaho 701, 708, 516 P.3d 571, 578 (2022) (a request for attorney fees was denied because it was almost seven months after the deadline in IDAPA); *Medrano v. Neibaur*, 136 Idaho 767, 769, 40 P.3d 125, 127 (2002) (a request for attorney fees was denied because it was six months after the deadline in an agency order). Here, Medeiros timely filed his initial memorandum on January 4, 2024. He then filed his supplemental memorandum on February 20, 2024. Based on the timeline of the proceedings, this was a reasonable time to supplement the original memorandum and is far less time than the instances where this Court has denied such amendments. *See Chambers*, 170 Idaho at 708, 516 P.3d at 578; *Medrano*, 136 Idaho at 769, 40 P.3d at 127.

As discussed, the district court properly recognized its discretion to consider factual supplementation to a memorandum of costs where the initial memorandum was timely filed (as it was here). Additionally, there was no evidence that York suffered any prejudice from the district court's consideration of the supplemental memorandum. At oral argument, counsel replied, "admittedly not," when asked if York suffered prejudice from the supplemental memorandum. Importantly, unlike Kemper Northwest's failure to state and analyze a proper *legal* basis for fees within the 14 days—which constitutes a "waiver" under both our caselaw and Rule 54(d) and (e)— the shortcomings in Medeiros' memorandum were not fatal because the court had the discretion to allow supplementation of facts. Therefore, the district court did not err when it awarded attorney fees to Medeiros.

Since York has failed to articulate any basis for concluding that the district court abused its discretion when it granted costs to Medeiros under Rule 54(d), we likewise affirm the district court's award.

### D. Mederios is entitled to attorney fees on appeal.

Both Medeiros and Kemper Northwest request attorney fees and costs on appeal. York also requests attorney fees on appeal should he prevail. All parties make the request under Idaho Code section 12-120(3), which states that:

> [I]n any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

> The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes.

I.C. § 12-120(3).

17

As discussed above, we note that Kemper Northwest and Medeiros both prevailed on York's appeal of the district court's dismissal of the breach of contract claim. Medeiros also prevailed on York's appeal of the dismissal of his fraud claim and we upheld the court's award of attorney fees to Medeiros against York. However, Kemper Northwest was unsuccessful in defending the large judgment for attorney fees it was awarded as the prevailing party below.

"This Court determines prevailing party status 'from an overall view, not a claim-by-claim analysis.' " *City of Meridian v. Petra, Inc.*, 154 Idaho 425, 455, 299 P.3d 232, 262 (2013) (quoting *Crump v. Bromley*, 148 Idaho 172, 174, 219 P.3d 1188, 1190 (2009)). If "both parties are partially successful, 'it is within the court's discretion to decline an award of attorney fees to either side.' " *Id.* (quoting *Crump*, 148 Idaho at 174, 219 P.3d at 1190). Applying this principle to the facts in *City of Meridian*, we concluded:

> [A]lthough two of the district court's rulings are reversed in the [Appellant's] favor, they are minor issues. We have left intact practically all of the district court's findings and conclusions and not modified any of its monetary awards. We consequently find that [Respondent] is the prevailing party on appeal.

*Id.* at 455–56, 299 P.3d at 262-263.

Here, because Medeiros prevailed on all the issues York has raised against him, he is entitled to attorney fees on appeal under 12-120(3). However, although Kemper Northwest prevailed on York's breach of contract claim, York was successful in obtaining a reversal of the attorney fees awarded below. While the initial litigation primarily focused on the underlying breach of contract and fraud claims, the attorney fees awarded by the trial court were a major factor in York's appeal. Taking an overall view of the appeal, we conclude that our reversal of the district court's award of $116,461.84 in attorney fees was a significant victory for York. Thus, we cannot conclude that it was just a "minor issue." *See id.* Accordingly, we decline to award fees on appeal to either York or Kemper Northwest because both parties prevailed in part and there is no overall prevailing party. *Rupp v. City of Pocatello*, ___ Idaho ___, 574 P.3d 335, 349 (2025); *see also McOmber v. Thompson*, ___ Idaho ___, 572 P.3d 736, 754 (2025).

In his briefing, Medeiros has also made an unusual request for "post-Judgment interest, at the statutorily set rate, that has accrued since the [d]istrict [c]ourt's entry of the [First] Amended Judgment." Medeiros makes this request pursuant to Idaho Code section 28-22-104(2), which sets the "legal rate of interest on money due on the judgment of any competent court" at five percent plus the base rate in effect at the time of entry of the judgment. I.C. § 28-22-104(2). Medeiros cites

to this Court's decision in *Roesch v. Klemann*, 155 Idaho 175, 178, 307 P.3d 192, 195 (2013), where this Court stated that "the plain language of Idaho Code [section] 28-22-104(2) indicates that interest on a judgment must accrue at the statutory rate and that the provision applies to all judgments." While Medeiros may be correct, this Court does not address issues related to the collection of a judgment (including the determination of post-judgment interest) that have not been contested below. Therefore, we decline to address Medeiros' request because any relief on this matter must be sought from the district court in the first instance.

## IV. CONCLUSION

We affirm the district court's dismissal of York's breach of contract claims against Madeiros and Kemper Northwest, as well as its dismissal of the fraud claim against Medeiros. We also affirm the district court's award of attorney fees to Medeiros. However, we vacate the award of attorney fees to Kemper Northwest in the amended judgment. Attorney fees and costs on appeal are awarded to Medeiros. I.A.R. 40(a).

Chief Justice BEVAN, and Justices BRODY and MEYER and WHITNEY, J. Pro Tem, CONCUR.